# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (at Cincinnati)

| | | |
|---|---|---|
| **AMANDA CATON** | : | Case No. |
| c/o Zachary Gottesman | : | |
| 404 East 12th Street | : | Judge |
| Cincinnati, OH 45202, | : | |
| | : | |
| and | : | |
| | : | |
| **PATRICK CATON** | : | |
| c/o Zachary Gottesman | : | |
| 404 East 12th Street | : | |
| Cincinnati, OH 45202, | : | |
| | : | |
|     PLAINTIFFS, | : | |
| | : | |
| v. | : | |
| | : | |
| **JACOB SALAMON** | : | |
| 120 West Loveland Avenue | : | |
| Loveland, Ohio 45140, | : | |
| | : | |
| **AND** | : | |
| | : | |
| **CITY OF LOVELAND, OHIO** | : | |
| c/o Joe Braun, City Solicitor | : | |
| 150 E 4th St #4 | : | |
| Cincinnati, OH 45202, | : | |
| | : | |
| **AND** | : | |
| | : | |
| **DENNIS S. RAHE** | : | |
| 120 West Loveland Avenue | : | |
| Loveland, Ohio 45140, | : | |
| | : | |
| **AND** | : | |
| | : | |
| **SHAWN PARKS** | : | |
| 120 West Loveland Avenue | : | |
| Loveland, Ohio 45140, | : | |
| | : | |
|     DEFENDANTS. | : | |

# VERIFIED COMPLAINT WITH JURY DEMAND ENDORSED HEREON

Plaintiffs, Amanda Caton ("Amanda") and Patrick Caton ("Patrick") (collectively the "Catons"), by and through counsel, for their *Verified Complaint* (the "Complaint") against Defendants, Jacob Salamon ("Salamon"), in his individual capacity, the City of Loveland ("Loveland"), Ohio, Dennis S. Rahe ("Rahe"), and Shawn Parks ("Parks"), state and allege as follows:

## INTRODUCTION

1. On February 9, 2020, Amanda Caton was driving her and her husband home when she was illegally stopped and arrested. But the backstory to the incident at issue started much earlier, when Loveland and Dennis Rahe (the Chief of Police) hired Salamon, who had a known history of dishonesty in the discharge of his official duties, coupled with overzealousness and a willingness to violate the United States Constitution, with the Ohio State Patrol and was about to be disciplined or fired for this dishonesty when he resigned. Loveland and Rahe hired him anyway, with knowledge of this dangerous combination, but did not care, as Loveland's municipal policy and Rahe's police department policy was to disregard officer's past histories of dishonesty and overzealousness and knowledge that they would continue these practices.

2. This action involves the deprivation of Amanda and Patrick Caton's Fourth, Fifth, and Fourteenth Amendment rights by the Defendants, Salamon, Loveland, Rahe, and Parks. This action challenges, and seeks redress for, the Constitutional violations committed by Defendants, Salamon and Loveland, against the Catons on and after February 9, 2020. This suit seeks money damages against Defendants, Salamon, Loveland, Rahe, and Parks, under 42 U.S.C. § 1983, and attorney fees under 42 U.S.C. § 1988, and claims under state law.

**PARTIES**

3. At all times relevant hereto, Amanda and Patrick were, citizens and residents of the State of Ohio. Both Amanda and Patrick are City of Cincinnati police officers, with Amanda serving as a Captain in the CPD and Patrick as a Lieutenant in the CPD.

4. At all relevant times hereto, Defendant, Salamon, was, and is, a citizen and resident of the State of Ohio. He is also a member of the Loveland Police Department ("LPD").

5. At all relevant times hereto, Defendant, Rahe, was, and is, a citizen and resident of the State of Ohio. He was, at all times relevant hereto, also a member of the LPD, and was, formerly its Chief of Police.

6. At all relevant times hereto, Defendant, Parks, was, and is, a citizen and resident of the State of Ohio. He is also a member of the LPD.

7. Finally, Loveland is a municipality chartered under Ohio law.

**JURISDICTION AND VENUE**

8. Subject matter jurisdiction over the federal claims and causes of action asserted by the Catons in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

9. Subject matter jurisdiction over the state law claims brought against Salamon and Parks in their individual capacities is conferred on this Court pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Defendants because they are citizens of and reside in, or is a subdivision of, Ohio.

11. Venue in this District and division is proper, pursuant to 28 U.S.C. §1391 and other applicable law, because all of the deprivations of Plaintiffs' Constitutional Rights occurred in counties within this District.

## FACTS COMMON TO ALL CLAIMS

12. On February 9, 2020, at approximately 2:00 a.m. to 3:00 a.m., Plaintiffs left a location known as Cindy's, in Loveland, Ohio. Amanda was driving.

13. Amanda committed no traffic violations, and her driving was unremarkable.

14. Unfortunately, that night, dishonest, former-trooper, LPD officer Salamon was assigned to work.

15. Salamon was determined to make a name for himself in the LPD, perhaps to try and overcome his past reputation for dishonesty, and to do so undertook to conduct aggressive OVI enforcement (regardless of whether the driver was actually guilty or, as was frequently the case, not guilty) to raise his statistics, and win awards and accolades.

16. Among other things, after his first year of probation from 7/16/2017 to 7/13/2017, Salamon's review and rating, approved by Defendant Rahe, reflected that "[s]ince his arrival, he has become the leader enforcer for OVIs for the division. His years of experience with the Patrol has brought to Loveland an expert in the detection and prosecution of impaired drivers."

17. In 2018, Salamon was nominated for the Clermont County Law Enforcement Awards Banquet nomination from the City of Loveland and Rahe reflected that he was "dedicated to the reduction of crashes involving intoxicated drivers through concentrated traffic enforcement," and that his motivation was "the loss of a close friend that was killed at the hands of a drunk driver," and that Salamon, as a single officer out of sixteen officers, was responsible for 46 of 57 (or 80%) DUI arrests within the LPD over the year.

4

18. Instead of questioning the validity of these stops, Loveland and Rahe, as a pattern of action and municipal policy, praised and encouraged Salamon's overzealousness.

19. Rahe, as police chief, was aware that Salamon was a loose, dishonest canon, and nevertheless let him loose on the streets of Loveland, aware that he would dishonestly enforce the law and violate the rights of citizens, and, in fact, undertook to encourage such activities.

20. In February, 2020, as further evidence of the policies and practices that encouraged the actions complained of herein, the Mothers Against Drunk Driving ("MADD") Ohio organization had a deadline for nomination of the MADD award. In the submission for that award, mere days after the incident at issue in this case, Loveland's Police Chief, Rahe, cited his significant OVI arrest statistics.

21. Salamon was motivated to increase his statistics for that award and other accolades, at the expense of the truth, and the United States Constitution.

22. The City of Loveland has a number of policies and procedures that, on their face, purport to require objectivity, fidelity to the law, and ethical conduct. But, in practice, these are mere surplusage, which, among other things, were causally disregarded without consequence by LPD officers, including Salamon, and with the knowledge of Chief of Police Rahe and Loveland officials.

23. On February 9, 2020, prior to 2:24 a.m., Salamon camped out outside Cindy's, with the motivation and intention, to stop vehicles. He applied a presumption of guilt and dishonesty, to any driver of a vehicle leaving that location.

24. On February 9, 2020, at approximately 2:24 a.m., and motivated solely by his self-interest in increasing his statistics prior to the submittal of the MADD nomination mere days

later, Salamon illegally stopped the vehicle being driven by Amanda, and in which her husband Patrick, was a passenger.

25. This stop occurred approximately two to three miles from the Caton's home.

26. To be clear, and for the avoidance of all doubt, there was no traffic violation committed by Amanda Caton that could give rise to a stop.

27. Amanda Caton was not under the influence of alcohol.

28. Salamon then approached the drivers' side of the car, and Amanda identified herself.

29. At no time did Amanda admit to drinking or impairment and there were no valid field sobriety tests taken or performed. Amanda did not smell of alcohol, her speech did not reflect alcohol impairment, and when asked to exit the vehicle by Salamon, there was no impairment reflected in her walking or demeanor. Put more bluntly, there was absolutely no indicia of her having consumed alcohol, much less any indicia of impairment.

30. Approximately six minutes into the stop, Parks arrived on scene.

31. Salamon then had a conversation with Parks, revealing his intent to conduct field sobriety checks to "clear" the scene, reflecting his belief that Caton was not impaired.

32. Parks, for his part, knew that Salamon had a pattern and practice of stretching the truth, and trampling the Constitution, and determined that, rather than stopping the in-process violation of the Catons' constitutional rights, he would instead sit back and do nothing.

33. For the avoidance of all doubt, Parks is liable for the preventable harm caused by the actions of Salamon, because he observed the violations of the constitution at issue, including the unjustifiable continued detention and unjustifiable arrest, had a realistic opportunity to intervene to prevent the harm from occurring, and declined to do so.

34. Rather than terminate the stop, Salamon decided he had a quota to meet, and he nevertheless arrested Caton for OVI, without probable cause. Parks did nothing to stop or prevent it, but had the opportunity and ability to do so.

35. Salamon also falsely claimed that Caton committed a marked lanes violation.

36. Salamon kept the Catons at the side of the road, without probable cause or reasonable suspicion, for over 20 minutes, when he then took Amanda Caton to the station, cited her, and released her. Parks did nothing to stop or prevent it, but had the opportunity and ability to do so.

37. When such a seizure through an automobile stop occurs, it must be based on reasonable suspicion and Salamon had no such reasonable suspicion. The rights at issue were clearly established in *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

38. Salamon approached the vehicle, and, despite having observed no clues that would suggest that she was impaired, undertook an OVI investigation.

39. This investigation improperly and unconstitutionally expanded the scope of the investigation, in contravention of the Catons' constitutional rights under clearly established law. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

40. To be clear, Salamon was not authorized under R.C. 2935.26 to arrest Amanda for any minor misdemeanor, but she committed no such minor misdemeanor.

41. Afterwards, Salamon drove Amanda home. But prior to doing so, he called for backup, and thus had multiple cruisers (including Parks) approach the Catons' residence.

42. Rather than simply dropping Amanda Caton off at her home, two LPD officers (one of whom was Salamon and the other Parks) escorted her onto her property (which was well

outside LPD jurisdiction), without her consent, for the deliberate purpose of provoking a confrontation with Patrick, who, in the meantime, had walked home from the traffic stop.

43. Both officers proceeded onto the property, and into the curtilage of the home, immediately outside the garage. They had no warrant or exigent circumstances that might have warranted this intrusion.

44. An unpleasant exchange occurred, in which the LPD officers baited Patrick into yelling at the officers.

45. In an effort to inflict harm, and demonstrating malice, they then released the video of the exchange to the media with the deliberate purpose of inflicting harm, including embarrassment and public ridicule upon the Catons.

46. The charges Salamon filed against Amanda proceeded to trial, at which Amanda was found not guilty of all charges (both the OVI and the marked lanes violation).

47. To be clear: there was no probable cause for any of the charges, and they were all instituted with the actionable, requisite malice.

48. As a consequence of the foregoing, Plaintiffs incurred significant damages, including tens of thousands of dollars in defense and attorney costs, significant lost wages, including lost wages from being precluded from favorable assignments, and other lost wages that would have otherwise occurred but for the false charges, significant emotional distress in an amount to be proven at trial, and such other damages as might be proven at trial.

49. The Plaintiffs and Defendants entered into and executed a written tolling agreement, which was later amended, and which tolled time under any applicable statute of limitations, from February 1, 2022 through June 17, 2022.

## COUNT I – VIOLATION OF FOURTH, AND FOURTEENTH AMENDMENTS

50. Plaintiffs hereby incorporate the preceding paragraphs of his Complaint as if fully set forth herein.

A. Fourth/Fourteenth Amendment Violation – no basis for the stop

51. When such a seizure though an automobile stop occurs, it must be based on reasonable suspicion under the Fourth and Fourteenth Amendment, and Salamon had no such reasonable suspicion. The rights at issue were clearly established in *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Chief Rahe is also liable for this activity because he at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers, in that he knew about Salamon's past, hired him anyways, knew about Salamon's aggressive and unconstitutional activities, yet permitted them to continue, and in fact rewarded Salamon for his aggressive and unconstitutional activities in performance reviews and by nominating Salamon for awards.

B. Fourth/Fourteenth Amendment Violation – no basis for the investigation

52. Defendant, Salamon's, activities after the stop unconstitutionally expanded the scope of the investigation, in contravention of the Catons' constitutional rights under clearly established law under the Fourth and Fourteenth Amendment. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Chief Rahe is also liable for this activity because he at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers, in that he knew about Salamon's past, hired him anyways, knew about Salamon's aggressive and unconstitutional activities, yet permitted them to continue, and in fact rewarded Salamon for his aggressive and unconstitutional activities in performance reviews and by nominating Salamon for awards. For his part, Parks is liable for the preventable harm caused by

9

the actions of Salamon, because he observed the violations of the constitution at issue, including the unjustifiable continued detention and unjustifiable arrest, had a realistic opportunity to intervene to prevent the harm from occurring, and declined to do so.

    C.    <u>Fourth/Fourteenth Amendment Violation – no basis for the arrest</u>

53. The arrest was without probable cause under clearly established case law. *Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010); *Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012). Chief Rahe is also liable for this activity because he at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers, in that he knew about Salamon's past, hired him anyways, knew about Salamon's aggressive and unconstitutional activities, yet permitted them to continue, and in fact rewarded Salamon for his aggressive and unconstitutional activities in performance reviews and by nominating Salamon for awards. For his part, Parks is liable for the preventable harm caused by the actions of Salamon, because he observed the violations of the constitution at issue, including the unjustifiable continued detention and unjustifiable arrest, had a realistic opportunity to intervene to prevent the harm from occurring, and declined to do so.

    D.    <u>Warrantless entry into the curtilage of the Plaintiffs' Home in violation of the Fourth/Fourteenth Amendment Violation</u>

54. Defendants' Salamon and Parks' warrantless entry (with no applicable and recognized exception to the warrant requirement) into and search of the curtilage of Plaintiffs' home was an additional violation of the Fourth Amendment of the United States, under clearly established case law. *Collins v. Virginia*, 138 S. Ct. 1663 (2018). They did so, for the purpose of antagonizing and baiting Plaintiff Patrick Caton in the area outside his home, with the intent to malign him publicly, and then proceeded to do so. Chief Rahe is also liable for this activity because he at least implicitly authorized, approved, or knowingly acquiesced in the

10

unconstitutional conduct of the offending officers, in that he knew about Salamon's past, hired him anyways, knew about Salamon's aggressive and unconstitutional activities, yet permitted them to continue, and in fact rewarded Salamon for his aggressive and unconstitutional activities in performance reviews and by nominating Salamon for awards.

55. These actions caused Plaintiffs' damages, in an amount to be proven at trial, including, without limitation, humiliation, public scorn, and negative employment consequences.

F. <u>General allegations</u>

56. Plaintiffs are citizens of the United States of America.

57. Plaintiffs also have clearly established rights and protections under the Fourth and Fourteenth Amendments to the United States Constitution.

58. Salamon, Parks, and Rahe, using their offices and acting under color of state law, violated Plaintiffs' Fourth Amendment Rights, which has deprived, are depriving, and will deprive them of their rights to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized" which rights are clearly established. Defendants Salamon, Parks, and Rahe, thereby subjected themselves under 42 U.S.C. § 1983, to liability for monetary damages sought herein.

59. Salamon, Parks, and Rahe, using their offices and acting under color of state law, violated Plaintiffs' Fourteenth Amendment Rights, which have deprived, are depriving, and will deprive them of their rights to equal protection and due process, which rights are clearly established. Salamon, Parks, and Rahe, thereby subjected themselves under 42 U.S.C. § 1983, to be liable for monetary damages sought herein.

11

60. Salamon, Parks, and Rahe, each abused the authority of their respective offices and, while acting under color of law and with knowledge of Plaintiffs' clearly established rights, used their offices to violate Plaintiffs' Fourth, and Fourteenth Amendment rights.

61. As against Salamon (and Parks for the illegal home/curtilage intrusion), the Catons further state that they were the actors responsible for the constitutional violations complained of, including the unlawful and unconstitutional stop, and unlawful and unconstitutional arrest, the unconstitutional continued detention, and other breaches of the Constitution as set forth herein. As such, Plaintiffs seek damages in an amount to be determined at trial under 42 U.S.C. § 1983, for violations of their clearly established constitutional rights as set forth herein. The measure of such damages shall be proven at trial, and exceed $75,000.00, exclusive of interest and costs.

62. As against Rahe, he at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers, and Plaintiffs seek damages in an amount to be determined at trial under 42 U.S.C. § 1983, for violations of their clearly established constitutional rights as set forth herein. The measure of such damages shall be proven at trial, and exceed $75,000.00, exclusive of interest and costs.

63. And, with respect to Parks for the failure to intervene, he had knowledge of Salamon's constitutional violations, had more than sufficient time to stop them, yet refused to do so, and Plaintiffs seek damages in an amount to be determined at trial under 42 U.S.C. § 1983, for violations of their clearly established constitutional rights as set forth herein. The measure of such damages shall be proven at trial, and exceed $75,000.00, exclusive of interest and costs.

64. Plaintiffs further seeks punitive damages against Salamon, in his individual capacity, since his actions complained of were motivated by evil motive or intent, and/or when it

involves reckless or callous indifference to the federally protected rights of Plaintiffs. Plaintiffs demand judgment on these punitive damages against Salamon, in his individual capacity, in an amount to be determined at trial, but not less than $100,000.00, exclusive of interest and costs.

Liability as to the City of Loveland under *Monell*

65. Plaintiffs reincorporate the previous allegations as if fully set forth herein.

66. Defendant, Loveland had policies and customs that gave rise to the violations by Salamon as set forth herein, including the following: (i) there was a pattern and practice of hiring officers with histories of dishonesty, being overly aggressive, and a willingness to violate the Constitution, to push arrests high; (ii) Loveland routinely supported, and gave support to, Salamon's activities, despite serious indicia he was routinely violating the law and United States' Constitution to drive his arrest record high; (iii) Loveland, with knowledge of Salamon's past history of overly aggressive tactics, lawlessness, and dishonesty, willfully withheld his employment history with the Ohio State Patrol and his pending termination and disciplinary proceedings for dishonesty, from defense attorneys in his cases (constituting routine Brady information) so as to permit the unconstitutional violations to continue; and (iv) Salamon was aware of Loveland's efforts to allow him to be a one man vigilante, and Salamon has previously testified to this effect.

67. This all goes to the fact that the violations complained of herein was not a one-off incident, but rather was a widespread, routine, and systemic practice of Loveland

68. Loveland is thus liable under *Monell* for the violations complained of.

**COUNT II – FALSE ARREST/FALSE IMPRISONMENT**

69. Plaintiffs incorporate the previous allegations as if fully set forth herein.

13

70. Plaintiffs were intentionally confined within a limited area, for an appreciable amount of time, against their will and without lawful justification, by Defendants Salamon and Parks.

71. Plaintiffs suffered damages therefrom, in an amount to be proven at trial.

72. Defendant Salamon engaged in these actions with the requisite malice to warrant the imposition of punitive damages.

73. Defendant, Loveland, knowingly authorized, participated in, or ratified actions or omissions of Defendants Salamon and Parks, sufficient to warrant the imposition of punitive damages.

## COUNT III – MALICIOUS PROSECUTION

74. Plaintiffs reincorporate the previous allegations as if fully set forth herein.

75. Defendant Salamon had malice in instituting or continuing the prosecution of Amanda, had no probable cause to institute the prosecution, and the prosecution terminated in favor of the Amanda.

76. Plaintiffs suffered damages therefrom, in an amount to be proven at trial.

77. Defendant, Salamon, engaged in these actions with the requisite malice to warrant the imposition of punitive damages.

78. Defendant, Loveland, knowingly authorized, participated in, or ratified actions or omissions of Defendant, Salamon, sufficient to warrant the imposition of punitive damages.

## COUNT IV – INVASION OF PRIVACY INTEREST ON SECLUSION

79. Plaintiffs reincorporate the previous allegations as if fully set forth herein.

80. Defendants Salamon and Parks intentionally physically intruded upon the private affairs of the Plaintiffs, namely upon their home and personal property, recording their intrusion,

which should have been their castle and free from governmental intrusion, without a warrant or the existence of any exigent circumstance, and in so doing, intruded upon the solitude or seclusion of the Plaintiffs and their private affairs.  This intrusion was, and would be, highly offensive to a reasonable person.  In doing so, they antagonized Patrick Caton, sufficient to cause him to scream and yell.

81. Defendants Salamon, Parks, and Rahe, then undertook efforts to ensure widespread media footage of this interaction, constituting additional actions in furtherance of their invasion of their privacy, which was highly offensive to a reasonable person, and was offensive to the Plaintiffs.

82. Defendants acted in bad faith or with a corrupt motive in the foregoing actions.

83. The foregoing invasion of privacy has caused Plaintiffs damages in an amount to be proven at trial, but exceeding $75,000, and Defendants, Salamon, Parks, and Rahe, engaged in these actions with the requisite malice to warrant the imposition of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as prayed for, including:

A. That this Court issue a declaration that the practices complained of herein, by Defendants were and are unconstitutional;

B. That Plaintiffs be awarded money damages, including both compensatory and punitive damages against the individual capacity Defendants and City Defendant, in an amount to be proven at trial, and exceeding $75,000.00, exclusive of interest and costs;

A. That trial by jury be had on all issues so triable;

B. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

15

C. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/Zachary Gottesman
Zachary Gottesman (0058675)
Gottesman & Associates, LLC
404 East 12th Street, First Floor
Cincinnati, Ohio 45202
513/651-2121
zg@zgottesmanlaw.com

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com
**Attorneys for Plaintiff**

## JURY DEMAND

Pursuant to FRCP 38 and other applicable law, Plaintiffs demand trial by jury on all causes so triable.

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Amanda Caton, declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on ____6/8/22____ .

____A. Caton____
Amanda Caton