IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Amanda Caton, *et al.*, | : | |
| | : | Case No. 1:22-cv-345 |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting in Part and Denying in Part Motions to Exclude, Limit, or Strike Experts |
| Jacob Salamon, *et al.*, | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiffs' Motion to Exclude, or in the Alternative Limit, Testimony of Joseph Suhre ("Motion to Exclude or Limit Suhre") and Defendants' Motion to Strike Improper Expert Opinions and Affidavit of Tony Corroto ("Motion to Strike Corroto"). (Docs. 27, 35.) This case arose when Defendant Jacob Salamon, a police officer for the City of Loveland, Ohio, arrested Plaintiff Amanda Caton, an off-duty police officer for the City of Cincinnati, Ohio, for operating a vehicle when intoxicated ("OVI"). Plaintiff Patrick Caton, Amanda Caton's husband and also an off-duty police officer for the City of Cincinnati, was a passenger in the vehicle when Amanda Caton was pulled over and arrested, and he was present when Officer Salamon later dropped off Amanda Caton at their home. The Catons have sued Officer Salamon, former Loveland Police Chief Dennis Rahe, Officer Shawn Parks, and the City of Loveland for violating their civil rights.

Plaintiffs proffer Tony Corroto and Defendants proffer Joseph Suhre, Esq. as their experts on police practices involving OVI investigations. Plaintiffs broadly move to exclude or limit the expert report and testimony of Suhre under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Although Defendants move to

strike Corroto's expert opinion in full, they only specifically object to his opinion that Defendants lacked probable cause to stop and arrest Amanda Caton. For the reasons below, the Court will **GRANT IN PART** and **DENY IN PART** both Plaintiffs' Motion to Exclude or Limit Suhre and Defendants' Motion to Strike Corroto.

I.  **LEGAL STANDARD**

> Federal Rule of Evidence 702, as amended effective December 1, 2023, provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's notes to 2023 amendments. Rule 702 requires the district judge to ensure that any scientific, technical or specialized knowledge evidence to be admitted "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The district court must perform its gatekeeper function before the testimony can be admitted regardless of whether the testimony is based on scientific knowledge, technical knowledge, or other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 147–149 (1999).

To begin, Rule 702(a) addresses the qualifications of the purported expert witness and requires a showing that the proffered testimony will be relevant. The Sixth Circuit "take[s] a

2

liberal view of what knowledge, skill, experience, training, or education" is sufficient for an expert to be qualified to testify. *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208–209 (6th Cir. 2015) (internal quotation and citation omitted). The relevant issue is not "the qualification of the witness in the abstract" but "whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). "Relevant factors include, among other things, the length of the expert's experience in the field; whether she has previously been qualified by courts to testify as an expert; and her education and training credentials as demonstrated through coursework, hours of formal training, and designations or certificates." *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2024 WL 621002, at *3 (S.D. Ohio Feb. 14, 2024) (citations omitted). The key question is "whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth." *Princeton Excess & Surplus Lines Ins. Co. v. Caraballo*, No. 1:21CV1981, 2024 WL 2294827, at *19 (N.D. Ohio May 21, 2024) (quoting *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981)).

Next, Rule 702(b), (c), and (d) all concern the reliability of the purported expert's testimony. The Supreme Court in *Daubert* identified several factors that might bear on a reliability determination in the realm of scientific testimony: testing, peer review, publication, known or potential rate of error, and general acceptance. 509 U.S. at 593–594. The *Daubert* factors "are neither definitive nor exhaustive" and may not apply in every case. *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 407 (6th Cir. 2006), *abrogated on different grounds*, *A.K. by and Through Kocher v. Durham Sch. Servs, L.P.*, 969 F.3d 625, 630 (6th Cir. 2020). In certain cases, an expert's experience alone may provide a reliable basis for his testimony. Fed. R. Evid. 702 (2000 Amendments advisory committee notes). "If the

3

witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.*; *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (quoting the advisory committee notes). An evaluation of the reliability of an expert opinion does not involve a determination of whether the opinion is correct. *See In re Scrap Metal Antitrust Lit.*, 527 F.3d 517, 529–530 (6th Cir. 2008).

**II.     ANALYSIS OF PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT SUHRE**

Joseph Suhre, Esq. is a criminal defense attorney who was licensed in 1999 and has been focused mainly on OVI defense since 2002. (Doc. 21-1 at PageID 1781; Doc. 29 at PageID 2022–2023.) He attended the Scarlet Oaks Police Academy and served as an auxiliary police office in Blue Ash, Ohio from 1995 to 2001. (Doc. 21-1 at PageID 1781.) As an attorney, he completed training in OVI detection through courses with the Nation Highway Traffic Safety Administration ("NHTSA") and Advanced Roadside Impaired Driving Enforcement, both likely more than fifteen years ago. (Doc. 29 at PageID 2023.) He has been the co-author of the Thomas Reuters' OVI practice manual for Kentucky, a state that follows the NHSTA standards, since 2014. (*Id.* at PageID 2095; Doc. 29-2 at PageID 2104.) Finally, he has provided instruction on the NHTSA standards for OVI to attorneys in Kentucky and Ohio, police cadets, and law enforcement officials. (Doc. 29 at PageID 2091–2093; Doc. 29-2 at PageID 2104.)

Plaintiffs first argue that Suhre is not qualified to testify as a police practices expert. The Court agrees with Defendants that Plaintiffs frame the issue too broadly. The issue is whether Suhre is qualified to offer expert testimony on police practices involving investigations into potential instance of OVI by applying the NHTSA's OVI-detection standards. "Courts have

permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). Though Suhre has not offered expert testimony in a court of law before, he has been retained to instruct about NHTSA standards by the publishing industry, attorneys, and law enforcement organizations. Suhre meets the standard from *Champion*. The Court finds that he is qualified with specialized knowledge in the application of NHTSA standards that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

The determination that Suhre is qualified to offer opinion testimony here does not mean that his report and deposition testimony are fully admissible. In this case, Suhre reviewed Officer Salamon's dashcam video to determine whether he acted in accordance with NHTSA standards when he pulled over the Caton's vehicle for suspicion of OVI. Plaintiffs do not challenge that the video is unreliable or inaccurate in any way. They do challenge certain opinions and testimony of Suhre as irrelevant and unreliable.

First, Plaintiffs criticize Suhre's statement in his expert report that Officer Salamon observed what the NHTSA refers to as a "vigilance problem" when there was "a 4-second delay between the [traffic] light turning green and Ms. Caton's vehicle proceeding forward." (Doc. 29-2 at 2107.) He also stated in his deposition that "four seconds after the light turns before you started moving seems long to me" when there is "no other traffic on the road." (*Id.* at PageID 2045.) Plaintiffs assert this opinion goes against the NHTSA standard that Suhre purports to be applying. The NHTSA publication, *The Visual Detection of DWI Motorists* ("NHTSA Visual Detection publication") states:

> A driver whose vigilance has been impaired by alcohol also might respond more slowly than normal to a change in a traffic signal. For example, the vehicle might

5

remain stopped for an unusually long period of time after the signal has turned green.

(Doc. 29-7 at PageID 2145.)[1] The NHTSA Visual Detection publication does not define what amount of time is "normal" versus "unusually long." With no further guidance, the Court cannot say that Suhre's opinion applying his own judgment to the NHTSA standard is unreliable.[2]

Elsewhere, Suhre opines that Officer Salamon had probable cause to pull Amanda Caton over for two traffic violations—violations of Ohio Revised Code 4511.25 and 4511.36(A)(2)[3]—for failing to maintain her lane when she turned left from Second Street to East Broadway in Loveland, Ohio. (Doc. 29-2 at PageID 2018.) Plaintiffs object to this opinion for two reasons.

---

[1] The NHTSA Visual Detection publication is referenced and included within the NHTSA's *DWI Detection and Standardized Field Sobriety Testing* Participant Manual, which the parties refer to in their briefing as the NHTSA Manual. The NHTSA Manual does not give more guidance on the slow response to traffic signal issue than the NHTSA Visual Detection publication.

[2] The Court notes that the conclusion that the opinion was not formed in an unreliable manner is not a finding that the opinion is correct. *See In re Scrap Metal*, 527 F.3d at 529–530.

[3] Ohio Revised Code § 4511.25 provides in relevant part:

> (A) Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:
>
> (1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;

Ohio Rev. Code § 4511.25.

Ohio Revised Code 4511.36 provides in relevant part:

> A) The driver of a vehicle intending to turn at an intersection shall be governed by the following rules:
>
> * * * *
>
> (2) At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

Ohio Rev. Code § 4511.36.

6

First, they contend it is irrelevant. The Court agrees in part. Officer Salamon did not charge or accuse Amanda Caton of violating Ohio Revised Code § 4511.36(A)(2), and Suhre's opinion that she did violate that traffic provision will not help a factfinder "determine a fact in issue" for purposes of Rule 702(a). The Court will exclude Suhre from testifying that Amanda Caton violated Ohio Revised Code § 4511.36(A)(2).

Second, Plaintiffs object that Suhre cannot testify about whether Officer Salamon had reasonable suspicion or probable cause to pull over Amanda Caton for a violation. The Court agrees. "Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' Fed. R. Evid. 704(a), the issue embraced must be a factual one." *Berry*, 25 F.3d at 1353. Suhre's opinions about whether Officer Salamon had a reasonable suspicion of an OVI violation or probable cause of a traffic violation are inadmissible legal conclusions. *See*, *e.g.*, *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426–427 (6th Cir. 2006) (stating that district court did not err in ignoring expert report that opined on probable cause); *Henry v. City of Flint*, Civil Action No. 17-cv-11061, 2019 U.S. Dist. LEXIS 86225, at *21–22 (E.D. Mich. Apr. 19, 2019) ("[W]hile Westrick could opine that specific police actions did not conform to specific police policies, he may not opine that the Henry's arrest lacked probable cause."); *Morgan v. Westhoff*, No. 05-73583, 2006 U.S. Dist. LEXIS 58155, at *3 (E.D. Mich. Aug. 18, 2006) ("Defendants' experts are precluded from testifying that Defendants had probable cause to arrest Plaintiffs."). Accordingly, the Court will exclude Suhre from testifying about whether Officer Salamon had reasonable suspicion or probable cause.

Likewise, the Court will exclude Suhre from testifying on the application and meaning of statutes and case law generally. (*E.g.*, Doc. 29-2 at PageID 2108 (interpreting a decision of the Ohio Supreme Court as to the meaning of a statute).) "[E]xpert witnesses may not testify to legal

conclusions or to the applicability or interpretation of a particular statute or regulation." *McMillen v. Windham*, No. 316CV00558, 2019 WL 4017240, at *21 (W.D. Ky. Aug. 26, 2019). Courts are "capable" of interpreting statutes "without the assistance of an expert." *United States v. Smith*, 421 F. App'x 572, 575 (6th Cir. 2011); *cf. Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It is the responsibility of the court, not testifying witnesses, to define legal terms.").

### III.  MOTION TO STRIKE CORROTO

Plaintiffs' expert witness, Tony Corroto, served as a police officer with the City of Atlanta, Georgia Police Department for seventeen years, has taught driving-under-the influence enforcement to police recruits, and has been retained as an expert witness in thousands of court cases. (Doc. 30-1 at PageID 2205.) Defendants do not challenge his qualifications to offer expert testimony. Rather, they move to strike his testimony to the extent that he states in his report that Officer Salamon did not have probable cause to stop or arrest Amanda Caton. (Doc. 30-1 at PageID 2206, 2220.) The Court already held in regard to Suhre's testimony that an expert witness cannot testify about whether probable cause exists. *See DeMerrell*, 206 F. App'x at 426–427; *Henry*, 2019 U.S. Dist. LEXIS 86225, at *21–22; *Morgan*, 2006 U.S. Dist. LEXIS 58155, at *3. Accordingly, the Court will strike and not consider Corroto's report to the extent that he opines that Officer Salamon did not have probable cause to stop or arrest Amanda Caton. To the extent that Defendants request that the Court exclude Corroto's report or testimony in full because of the improper opinion about probable cause, that request is not supported and will be denied.

### IV.  CONCLUSION

Plaintiffs' Motion to Exclude, or in the Alternative Limit, Testimony of Joseph Suhre

8

(Doc. 27) is **GRANTED IN PART** and **DENIED IN PART**.  Suhre will not be excluded from testifying because he is unqualified to give opinion testimony under Federal Rule of Evidence 702.  His testimony will be limited consistent with holdings in Section II.  Likewise, Defendants' Motion to Strike Improper Expert Opinions and Affidavit of Tony Corroto (Doc. 35) is **GRANTED IN PART** and **DENIED IN PART**.  Corroto will not be permitted to testify about whether probable cause existed to stop or arrest Amanda Caton, but his report will not be otherwise excluded.

    **IT IS SO ORDERED.**

                                            BY THE COURT:

                                            S/Susan J. Dlott
                                            Susan J. Dlott
                                            United States District Judge